Joseph E. NAPIER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–0406–CR–237.

Court of Appeals of Indiana.

May 17, 2005.

J.J. Paul, III, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

BAKER, Judge.

Both the State and Napier have petitioned for rehearing in this case.[1] Napier was charged with, and convicted of, Operating a Vehicle with a BAC of .08 Percent or More, a class C misdemeanor. In this case of first impression, we were called upon to decide the applicability of the rule set forth in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as it related to the State's method of establishing a proper evidentiary foundation regarding the admissibility of various documents that are used to prove a defendant's breath test results. *Napier v. State*, 820 N.E.2d 144, 145 (Ind.Ct.App. 2005).

In our original opinion, we decided that the State's failure to present any "live" testimony at trial from Officer Anderson—the police officer who performed the chemical breath tests on Napier—violated the Confrontation Clause[2] of the United States Constitution in light of *Crawford*, inasmuch as such evidence was not "testimonial" in nature. *Id.* at 151. To be sure, in *Crawford*, the United States Supreme Court held that testimonial statements of witnesses absent from trial are admissible over a confrontation clause objection only when the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. *See Crawford*, 124 S.Ct. at 1374.

We further concluded in *Napier* that the admission of the breath test instrument certification documents at issue did not violate the rule announced in *Crawford*. *Napier*, 820 N.E.2d at 149–50. However, we held that the admission of the BAC ticket into evidence that purportedly proved Napier's breath test results was improper because the absence of any "live" testimony failed to establish the necessary foundation for the ticket's admission. *Id.* at 146. Hence, we concluded that the trial court abused its discretion in admitting Napier's breath test results into evidence, and we reversed his conviction on that basis. *Id.* at 151.

### DISCUSSION AND DECISION

#### I. Napier's Arguments

While Napier ultimately prevailed on appeal, he now petitions for rehearing,

---

1. We heard oral argument on the parties' petitions for rehearing on March 29, 2005. We commend counsel for their able presentations.

2. U.S. Const. Amend. VI.

claiming that we misconstrued *Crawford* in determining that the admission of the certification documents in lieu of live testimony did not violate the Confrontation Clause. Napier also raises the issue of whether the hearsay breath test evidence ticket is admissible under our rules of evidence. Finally, he attacks our determination that his inability to cross-examine the evidence as presented did not violate the Confrontation Clause because the information contained in the certificate of inspection does not relate to the issue of guilt or innocence.

At the outset, we note that the parties have pointed out that Napier stipulated at trial that Officer Anderson was properly certified to perform Napier's breath test. Appellee's Br. on Rehearing, p. 2. To be sure, the nature of Napier's trial objections focused on the admission of certificates of inspection, the instrument certificates, and the printout indicating that Napier's breath contained .14 grams of alcohol per 210 liters of breath. Tr. p. 6, 19. So, as the State acknowledges in its petition for rehearing that there was no argument as to Officer Anderson's qualifications or as to the manner in which he conducted the breath test, we now recede from our holding that this case must be reversed upon the theory that the State failed to lay a proper foundation for the admission of this evidence.

■ Turning to Napier's specific arguments on rehearing, he points out that Indiana Evidence Rule 702(b) provides that scientific expert testimony is admissible only when the court is satisfied that the scientific principles upon which the expert testimony rests are reliable. That is, once a trial court has determined that a particular scientific technique is capable of producing reliable results, questions regarding the reliability of the testing procedure—or its results—go to the weight of the scientific testimony and not to its admissibility. *McGrew v. State,* 682 N.E.2d 1289, 1292 (Ind.1997). Napier also asserts that the conviction must be reversed because he was prevented from questioning a trained witness as to whether the particular machine that was used in his case had been set up according to approved methodology. He further posits, "the accuracy of a particular breath test is always at issue in a criminal case." Appellant's Br. p. 3. Hence, Napier is arguing that in the absence of the opportunity to conduct the meaningful cross-examination of a witness who has been trained in the set-up and operation of the breath-test equipment, and the basics of the science of breath testing, the rebuttal of the various presumptions—that the machine was in proper working order and that the operator was properly certified—as set forth in the statutes, constitute nothing more than an "empty promise." Appellant's Br. p. 4–5.

In sum, Napier urges on rehearing that we erred in determining that his inability to question a witness regarding the reliability or accuracy of the test machine does not violate the Confrontation Clause pursuant to *Crawford.* To be sure, Napier contends that the determination of reliability of the evidence is placed into the hands of the department of toxicology, and grants the prosecutor a presumption that the determination made by the toxicology departments is reliable. Hence, such a procedure fails to provide for a witness who may be cross-examined about the reliability determination reflected in the certification, the accuracy of a particular test, or the presumptions applied to such evidence. Therefore, Napier contends that this procedure is fundamentally at odds with the right of confrontation.

Finally, Napier points out that we relied upon *Platt* for the notion that hearsay exceptions may be either judicially or stat-

utorily created. While we cited *Mullins v. State*, 646 N.E.2d 40 (Ind.1995) for the proposition that Indiana code section 9–30–6–15(a) created such an exception and provided for the admissibility of breath test evidence, Napier argues that we should have discussed *McEwen v. State*, 695 N.E.2d 79, 89 (Ind.1998), which determined that when a statute and a judicially created rule both address the admissibility of evidence, and different standards for such admissibility are created, the statute is nullified. Along these lines, Napier contends that the procedural statute applied in *Mullins* should have been declared a nullity to the extent that it purports to admit a breath test result.

## II. The State's Arguments

The State's petition for rehearing initially asserts that we should reconsider our analysis regarding the admissibility of a printout of breath test results because we resolved the issue "on a ground not raised by Napier, ... i.e., that the State failed to lay the proper foundation for the admission of the printout." Appellee's Br. p. 1. The State also contends that the rule set forth in *Crawford* does not apply here and that the cases we relied upon do not support a conclusion that the State was required to present live testimony to satisfy foundational requirements for the admission of printouts. Inasmuch as we have concluded above that the record shows that Napier did, in fact, stipulate to Officer Anderson's qualifications at trial, we now proceed to address the parties' arguments as they relate to *Crawford*.

The State argues that the *Crawford* rationale should not apply to evidence relating to the certification of breath test operators. That is, because we concluded that that evidence relating to instrument certification is not testimonial in nature, we should necessarily reach the same conclusion regarding evidence of operator certifi-

cation. To be sure, the State argues that, as with instrument certifications, operator certification also has no bearing on an accused's guilt or innocence.

Also, the State argues that two of the cases we cited in our opinion—*State v. Lloyd*, 800 N.E.2d 196 (Ind.Ct.App.2003), and *Wray v. State*, 751 N.E.2d 679 (Ind.Ct.App.2001)—stand for the proposition that Napier was free to explore the issue of Officer Anderson's certification by presenting evidence that he was not properly certified as an operator. Hence, the State points out that Napier could have called Officer Anderson on his own to testify and that Napier made no offer of proof regarding any purported deficiencies as to Officer Anderson's qualifications. As a result, the State maintains that Napier was never *precluded* from exploring Officer Anderson's qualifications. Rather, the State contends that Napier affirmatively chose not to do so. In essence, the State requests that we clarify our position as to whether the "live testimony" requirement in *Crawford* should apply to evidence regarding the proper performance of the test, and whether such testimony must be elicited directly from the operator.

## III. Resolution on Rehearing

In addressing the contentions advanced by the parties, we stand by our original decision where we stated that "our statutes have permitted the State to introduce hearsay documents at trial in order to establish an evidentiary foundation regarding the inspection and compliance with relevant regulations of breath test instruments." *Napier*, 820 N.E.2d at 147. We noted in our prior opinion that Indiana Code section 9–30–6–5 allows for the introduction of certificates of the director of the Department of Toxicology regarding inspection and compliance issues. *Id.* Additionally, in *Mullins v. State*, 646 N.E.2d 40 (Ind.1995), our supreme court held that

"Section 9–30–6–15(a) creates, in fact, just such an exception, making breath-test results admissible in prosecutions under § 9–30–5." *Id.*

We went on to hold in our original opinion—and we reaffirm now—that certificates of inspection and compliance are not testimonial in nature and, thus, do not fall within the rule announced in *Crawford.* *Id.* In our view, a defendant's inability to cross-examine information that is contained in the certificates is not the same type of evidence that concerned the *Crawford* court.

In *Crawford,* it was determined that out-of-court statements that are "testimonial" in nature are inadmissible unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington,* 124 S.Ct. at 1374. Non-testimonial statements, however, continue to be governed by evidence rules on hearsay and by the United States Supreme Court's opinion in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *See id.* As we noted in our original opinion, the *Crawford* court declined to answer the pivotal question as to whether a particular statement is testimonial or non-testimonial. Specifically, the Court stated:

> We leave for another day any effort to spell out a comprehensive definition of 'testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Id.*

In examining the above, the evidence at issue here—instrument certification as well as operator certification—bears no similarity to the type of evidence that the Supreme Court labeled as testimonial. The common thread regarding the evidence described above is the type of evidence that it is gathered in an investigative or prosecutorial setting. To be sure, it is apparent that operators of the breath test machine are not certified for purposes that relate to any particular case. Rather, operator certifications in circumstances such as these should be considered a function that is ministerial in nature. And we again reaffirm our position that an operator's certification does not have a bearing on the issue of guilt or innocence.

Also, as we pointed out in our original opinion, it would be "unreasonable … to have a toxicologist in every court on a daily basis offering testimony about his inspection of a breathalyzer machine and the certification of the officer as a proper administrator of the breath test." *Napier,* 820 N.E.2d at 149. As the State suggests, other evidence is available that would, perhaps, be sufficient to establish the proper performance of a breath test. For instance, an individual might testify that he observed the test operator perform the test properly, it may be possible for the State to admit a checklist into evidence detailing the steps that the operator took, or a videotape showing proper performance of the test could be admitted. Hence, evidence regarding instrument certifications absent a defendant's opportunity to delve into the qualifications of those who performed the certifications is permissible, and evidence relating to instrument certification is not testimonial in nature.

In sum, the evidence indicating that Officer Anderson was qualified as a breath test operator was properly admitted, and there is no requirement that live testimony must be offered as to instrument or operator certification. For these reasons, we grant the parties' petitions for rehearing

and remand this cause to the trial court with instructions that it reinstate Napier's conviction for operating a vehicle with a BAC of .08 percent or more as a class C misdemeanor.

SHARPNACK, J., and FRIEDLANDER, J., concur.